| | | |
|---|---|---|
| United States District Court | | Southern District of Texas |

| | | |
|---|---|---|
| 2120 Investments, L.P., et al., | § § § | |
| Plaintiffs, | § § | |
| versus | § § | Civil Action H-08-2914 |
| City of Houston, | § § | |
| Defendant. | § | |

# Opinion on Summary Judgment

1.  *Introduction.*

    Two property owners sued the city because an ordinance restricted development construction on their land for two years so the city could use it. Challenging the permit denial would have been futile because under no circumstances would the city allow development. The owners, however, were not injured, so their claims will be dismissed.

2.  *Background.*

    2120 Investments, L.P., and Greg and Linda Schoener own property in a floodway governed by the city ordinance banning building on flood-prone land. Code of Ordinances, City of Houston, Texas, § 19-43 (2006). For almost two years, this ordinance absolutely prohibited permits for new construction or substantial improvements on developments in a floodway. Before and after this time, the city engineer could issue building permits.

    2120 has used its property on the south side of Buffalo Bayou near downtown for automobile salvage, as ABC Auto Parts. It applied for two building permits during these two years. Houston denied the applications because the amended ordinance banned permits. 2120 did not submit plans describing the location or type of building-design or materials with its applications.

    The Schoeners have owned their property on the east shore of Lake Houston for six years. During the ban, the Schoeners applied for a permit to construct boathouse, bulk head, and pier. Houston approved it, and the Schoeners applied for no other permits.

3.   *Use.*

Landowners want to use their land. When the city forbids their using it so that it can use the land for its purposes, it takes it. When the city does not justly compensate them, it fails in its constitutional responsibility. The city took the land for holding and unrestricted flow of flood waters. U.S. Const. amend. V, XIV; Tex. Const. art. 1, §17, 19.

2120 and the Schoeners have sued the city for compensation for the two years that the arbitrary exclusion was in force.

4.   *Relief.*

The law currently requires a final decision by the governmental unit about the proposed use and the pursuit of compensation through the state courts before the citizen may sue in federal court. *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City* 473 U.S. 172 (1985). Typically, obtaining a final decision requires a citizen to challenge the decision within that government's administrative process before a suit is ripe. Landowners are not obliged by the Constitution to engage in empty or impossible gestures.

Had the plaintiffs submitted proper applications, the city's administrative process could not have issued a permit. As the city has conceded, its ordinance explicitly prohibited the issuance of permits and variances for property in a floodway. The only possible relief would have been appealing a variance denial to the City Counsel to change the law – a legislative rather than administrative response. The city may not force the plaintiffs to submit requests, ask for variances, and appeal the denials to the General Appeals Board and City Council when no permit may be granted. Here, when the entry clerk denied 2120 a permit, that decision was final. The outcome would have been the same had 2120 submitted another application with the correct address, full plans, and engineers' reports. All applications and appeals would have been denied – denied automatically – because they would have been appealing against an absolute ban.

The Constitution nowhere confides a citizen's right to compensation to the government's internal machinery – not to a mechanical charade of a final use decision and certainly not to three levels of state courts and the ephemera of discretionary review by the Supreme Court. No statute does that. Courts' supine obeisance to the false authority of the administrative state does that. That idea is peculiar and extra-constitutional when it is internal to the national government; it becomes empty and anti-constitutional when it evolves to be

applied to the states. Avoiding docket congestion because of hyperactivity in agencies is no reason to eviscerate the Constitution.

5.  *Standing.*

These claims are as empty as the city's administrative system. First, the Schoeners were issued the only permit they sought.

Neither plaintiff did anything to prepare for actual construction on their land. Although 2120 applied for two permits, it did not file plans. It application would have been denied or at least deferred until it had the information that the city legitimately needed to ascertain that the proposed project met its codes.

Also, 2120 and the Schoeners never actively offered their land for sale. They did not advertise or engage a broker. They have no offer or contract. Both continued to use their tracts as they had before the taking and afterwards. These facts do not present the court with a genuine case or controversy. Even a declaration of the ordinance's invalidity would be unavailable since it has been repealed.

6.  *Conclusion.*

Because harm to 2120 Investments and the Schoeners was neither actual nor imminent, this is not a controversy, and the Constitution limits this court to genuine disputes arising under the Constitution, the Laws of the United States, and Treaties. U.S. Const. art. III, § 2.

Signed on May 28, 2010, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge